# IN THE COURT OF APPEALS OF IOWA

No. 19-0030
Filed January 23, 2020

IN RE THE MARRIAGE OF JESSE GENE PLEGGENKUHLE
AND KIMBERLY LYNN PLEGGENKUHLE

Upon the Petition of
**JESSE GENE PLEGGENKUHLE,**
    Petitioner-Appellant,

**And Concerning**
**KIMBERLY LYNN PLEGGENKUHLE,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Fayette County, Bradley J. Harris,
Judge.

A former husband appeals the property and spousal support provisions of
a dissolution decree. **AFFIRMED AND REMANDED.**

James S. Updegraff of James S. Updegraff Law Office, West Union, for
appellant.

Christopher F. O'Donohoe of Elwood, O'Donohoe, Braun & White, LLP,
New Hampton, for appellee.

Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

Jesse Pleggenkuhle appeals the decree dissolving his twenty-two-year marriage to Kimberly. In the decree, the district court found two $50,000 payments from Jesse's family were gifts to both him and Kimberly for building and refinancing their marital home. Jesse contends those gifts were not divisible as marital property because his parents gave them to him alone, intending to keep the farm in the family. He also contends the award of spousal support is inequitable.

Because the district court correctly concluded the gift was to the couple, not Jesse alone, and the support award is equitable, we affirm on both grounds. Kimberly asks for appellate attorney fees; we remand for the district court to determine a reasonable award.

## I. Background facts and proceedings

Jesse and Kimberly met in the United States Army and married in 1996. They left the service in 2001 and settled in Iowa, Jesse's home state. They have two adult daughters. Both Jesse and Kimberly receive disability payments from the Department of Veterans Affairs. Jesse is forty-four years old and has a fifty percent disability; Kimberly is fifty-two years old and has a sixty percent disability.

Kimberly has a college degree and worked at a daycare for several years. She then left to care for the parties' children. In the years before the divorce, she worked for a landscaping company. She suffers from several mental-health

impairments and is treated by therapist Kimberly Conrad. Dr. Conrad testified Kimberly is unable to hold a full-time job.[1]

Jesse works for the grounds department of a college and has held that job for seventeen years. Jesse also helps operate his family farm with his father and uncle. He testified his farm only breaks even.

Jesse and Kimberly bought eighty acres of farmland from Jesse's grandparents when they moved to Iowa. Jesse's parents provided a $50,000 gift to help finance the building of a new house on the land. In 2012, Jesse and Kimberly refinanced the mortgage on the house. Again, Jesse's parents made a $50,000 payment to assist with the refinancing and lower the principal balance on the mortgage. Jesse and Kimberly held the property as joint tenants. In 2018, an appraiser valued the farm at $557,294.

Jesse filed for divorce in 2018. The district court awarded him the farmhouse along with half of the couple's bank and retirement accounts. The court also ordered him to make equalization payments to Kimberly totaling $288,682 in these installments: $88,682 on or before March 1, 2019; and the remaining $200,000 at $25,000 per year with an interest rate of 4.68% until paid in full. The court also ordered Jesse to pay spousal support of $750 per month until Kimberly dies or remarries.

Jesse appeals arguing (1) the two $50,000 payments were gifts to him and, therefore, exempt from the division of marital property; and (2) the spousal support award is inequitable.

---

[1] The record shows Kimberly did some janitorial work for Dr. Conrad's counseling practice. Dr. Conrad explained the practice allows clients who cannot afford therapy or the copays to work for the agency.

## II. Scope and Standard of Review

We review decrees de novo. *In re Marriage of Pals*, 714 N.W.2d 644, 646 (Iowa 2006). We give weight to the district court's fact findings, but do not consider them binding. *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). We give significant latitude to the district court in determining spousal support. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We will affirm unless the court's award fails to do equity between the parties. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

## III. Analysis

### A. Property division

Jesse contends the two $50,000 gifts from his parents were intended for him alone and not subject to division as assets of the marital estate.

The district court must identify and value the assets subject to division. *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013). For inherited property and gifts given to one spouse, the code provides such property "is not subject to a property division . . . except upon a finding that refusal to divide the property is inequitable to the other or to the children." Iowa Code § 598.21(6) (2018). We apply a two-prong test: first, we determine whether the property was transferred to just one of the spouses. *McDermott*, 827 N.W.2d at 678–79. If so, we determine whether it would be inequitable not to divide the property. *Id.* The donor's intent and the circumstances surrounding the gift control. *Id.* at 678–79.

Jesse and his father, Gene, both testified the purpose of the gifts was to keep the farm in the family. Gene testified the initial 2001 gift "was mostly for Jesse" and was meant "to maintain the family ownership." As to the 2011 gift,

Gene noted the high interest rate on the mortgage and the high cost of land and equipment and reiterated, "I regard it as a gift to Jesse."

Despite that testimony, the district court found the two payments were gifts to both Jesse and Kimberly. The gifts went to the purchase and then refinancing of the marital home, which Jesse and Kimberly held in joint tenancy. We recognize placing gifted property into joint ownership or comingling it with other marital assets does not by itself destroy the separate nature of the property. *See In re Marriage of Liebich*, 547 N.W.2d 844, 850 (Iowa Ct. App. 1996). But the evidence in this record shows the parents intended their gifts, when they were made, to assist both Jesse and Kimberly.

The Pleggenkuhles wanted the farm to stay in the family, and Kimberly was a part of their family before the dissolution. In 2011, Jesse's parents also made a $50,000 gift to Jesse's sister. Gene testified that gift was for his daughter "and her family to do the same—the exact same thing," meaning a contribution to their family home.

The 2001 and 2011 gifts benefited both Jesse and Kimberly by allowing them to build and maintain a family home. Jesse agreed he and his parents never discussed any intent that the gifts were only for him. Kimberly said she understood her in-laws to be giving those gifts to both her and Jesse as a married unit. Gene testified the 2001 gift was mostly, not exclusively, for Jesse. Although family relations have changed now that Kimberly and Jesse are divorced, those new dynamics do not retroactively revise the intent behind the gifts when they were bestowed to benefit the couple and their children. We affirm the district court's conclusion the gifts were divisible in the marital estate.

### B. Spousal support

Jesse next contends the spousal support award of $750 per month is excessive and should be eliminated. In determining a spousal support award, we consider the non-exhaustive list of statutory factors. *See* Iowa Code § 598.21A(1); *see also In re Marriage of Wilson*, No. 18-2140, 2019 WL 6358438, at *3 (Iowa Ct. App. Nov. 27, 2019) ("(1) [T]he marriage's length; (2) the parties' age and physical and emotional health; (3) the property distribution under section 598.21; (4) the educational attainments of the parties; (5) their relative earning capacities; (6) the feasibility of the party seeking maintenance to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage and the length of time necessary to achieve this goal; (7) tax consequences; and (8) any mutual agreements.").

The district court found Kimberly could not maintain a full-time job and no evidence supports any future possibility of that employment. Considering her disability payment, the parties' relative incomes and future earning capacity, the property division, and other appropriate factors, the court found $750 per month in spousal support was equitable.

Jesse complains on top of the $9000 he will pay each year in spousal support, the $25,000 yearly equalization payment will reduce his income from his reported $59,400 to $34,000. Those net earnings, he argues, are inequitable compared with Kimberly's reported income combining $29,480 from work and her pension, an IPERS account, collecting Social Security in ten years' time, and his property equalization payments.

Jesse's complaints are baseless. We do not consider Kimberly's income from future retirement savings in the present spousal support award. *See Gust*, 858 N.W.2d at 416 ("[F]uture retirement will ordinarily be considered to raise too many speculative issues to be considered in the initial spousal support award.") And although section 598.21A instructs us to consider the property division, we do not subtract the installment equalization payments from Jesse's yearly income to establish an equitable spousal support award. The equalization installment payments fulfill the equitable division of the marital property, as we affirm today. Here, spousal support is also justified.

Jesse also objects to the court's reliance on Dr. Conrad's testimony that Kimberly cannot maintain full-time employment. But he offered no countervailing evidence to suggest her job prospects would improve. Jesse also asserts Kimberly could find employment based on her work for Dr. Conrad. But Dr. Conrad explained those janitorial assignments replaced billing Kimberly for therapy sessions and the work was done under close supervision.

Many factors support the award of spousal support here. The parties were married for more than two decades during which Kimberly's mental health declined significantly. *See In re Marriage of Anliker*, 694 N.W.2d 535, 541 (Iowa 2005) (upholding spousal support award where record supported finding that wife's health had deteriorated and was unlikely to improve). She is older than Jesse. He does not report any ill health and continues his employment and farming activities. Subtracting spousal support from Jesse's estimated monthly income and adding it to Kimberly's side of the ledger gives each roughly equal monthly incomes. After

our de novo review of the record, we reach the same conclusion as the district court.  We find the spousal support award to be equitable.

### C.  Appellate Attorney Fees

Kimberly seeks appellate attorney fees.  Such an award is in our discretion. *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018).  In exercising that discretion, we weigh the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.  *Id.*  Because Jesse is better able to pay and Kimberly had to defend the appeal and prevailed, she is entitled to appellate attorney fees.  But because she did not file a fee affidavit, we remand to the district court to determine a reasonable fee award.  *See In re Marriage of Tribolet*, No. 18-1929, 2019 WL 4302130, at *7 (Iowa Ct. App. Sept. 11, 2019).  We assess costs to Jesse.

**AFFIRMED AND REMANDED.**